## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JACOB HAYGOOD,               )
                             )
      Plaintiff,           )
                             )
v.                           )      Case No. CIV-20-863-D
                             )
JWC ENVIRONMENTAL, INC.,     )
Successor to JWC Environmental, LLC;  )
John and Jane Does 1-100;    )
John Doe Corporations 1-10;  )
Other John Doe Corporations 1-10,  )
                             )
      Defendants.          )

## ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff Jacob Haygood [Doc. No. 48], and Defendant JWC Environmental, Inc. [Doc. No. 67]. The motions are fully briefed and at issue.

### *Background*[1]

This case stems from an injury caused by the 3-Hydro-IX Grinder ("Grinder"), a machine manufactured by Defendant JWC Environmental, Inc. ("JWC"). Earlier versions of the Grinder were primarily used at wastewater treatment facilities. By shredding "tough solids" encountered in sewage lines, Grinders prevented downstream pipes, pumps, and valves from becoming clogged and damaged. Pl.'s Mot. for Summ. J., Ex. 18 at 1. Now, Grinders are also used by solids-control technicians to shred drill cuttings at oil and gas

---

[1] This section includes material facts that are properly supported in the manner required by Fed. R. Civ. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide such support, the assertion is disregarded.

well sites. By "grinding down rocks and other debris," Grinders "protect[] downstream equipment, such as pumps, centrifuges and heat exchangers." *Id.*, Ex. 19 at 2.

On October 24, 2018, Plaintiff Jacob Haygood was working as a solids-control technician[2] at an oil and gas well site in Grady County, Oklahoma. At the well site, a Grinder was being used during the course of solids control operations.[3] While working near the Grinder, Plaintiff inadvertently dislodged a pin from a catwalk stationed above the Grinder. After he was unable to immediately locate the pin, he concluded that it fell into the Grinder's cutting chamber. In an effort to extract the pin, Plaintiff removed the Grinder's inspection plate. Although Plaintiff did not turn the Grinder's power switch from "on" to "off," he observed, upon removing the inspection plate, that "[n]othing was going on" inside the cutting chamber, which caused him to conclude "the machine was off." JWC's Mot. for Summ. J., Ex. 3 at 9-10. After he reached his hand into the cutting chamber for a second time, the Grinder restarted, and ultimately caused the injuries which form the basis of the present action.

All Grinders are equipped with a lock out, tag out system ("LOTO"). The LOTO system is a safety mechanism which allows users to "de-energize" the Grinder; it cannot

---

[2] At the time, Plaintiff was employed by non-party Clean Harbors.

[3] The subject Grinder was initially sold by JWC to Jelcon Equipment, Ltd., in 2014. Clean Harbors later purchased the Grinder from Skins Oilfield Rentals in 2017. *See* JWC's Mot. for Summ. J., Ex. 10, 11; *see also id.*, Ex. 1 at 4. The terms and conditions of the sale from JWC to Jelcon included a limited warranty and disclaimer stating that the "FOREGOING LIMITED WARRANTY IS THE EXCLUSIVE AND ONLY WARRANTY WITH RESPECT TO THE PRODUCTS AND SHALL BE IN LIEU OF ALL OTHER WARRANTIES . . . EXPRESS, STATUTORY OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY." *Id.*, Ex. 12 at 7.

be re-energized until the lockout is removed. *See* JWC's Mot. for Summ. J., Ex 1 at 11-12.

JWC also issued an operation and use manual with the subject Grinder. The manual

instructs the Grinder's users as follows:

> DO NOT ATTEMPT ANY MAINTENANCE ON THE EQUIPMENT
> DURING A POWER LOSS, THE GRINDER MAY START, STOP,
> REVERSE, OR RESTART AUTOMATICALLY AFTER POWER LOSS
> AND RECOVERY. ELECTRICAL LOCKOUT PROCEDURES MUST BE
> PERFORMED PRIOR TO SERVICING ANY EQUIPMENT OR
> CONNECTED EQUIPMENT.

*Id.*, Ex. 8 at 3. It also advises users to:

> VERIFY AND ENSURE POWER TO THE MOTOR CONTROLLER IS
> REMOVED, LOCKED OUT, AND TAGGED BEFORE PERFORMING
> ANY INSTALLATION, SERVICE, OR MAINTENANCE TASK
> INCLUDING THE REMOVAL OR ATTEMPTING TO REMOVE ANY
> OBSTRUCTION(S) FROM THE GRINDER.

*Id.* at 2.[4] In addition, a warning label was affixed to the Grinder at issue, which read:

> DANGER: SEVERE PERSONAL INJURY COULD RESULT IF HANDS,
> CLOTHING, HAIR, ETC. BECOME CAUGHT IN THE CUTTING
> CHAMBER. THIS EQUIPMENT REQUIRES ELECTRICAL LOCKOUT
> PROCEDURES PRIOR TO SERVICING OR REMOVAL OF ANY
> COVERS OR GUARDS.

*Id.* at 6.

The LOTO system was the Grinder's primary safety feature; the Grinder was not

equipped with an interlock device, which would effectively eliminate power to the Grinder

should a user open the inspection port. Although Plaintiff received training from Clean

---

[4] Clean Harbors' standard operating procedures also required users to follow LOTO procedures before performing maintenance on the Grinder. JWC's Mot. for Summ. J., Ex. 1 at 11; Ex. 3 at 4.

Harbors regarding appropriate LOTO procedures, he failed to lock and tag out the Grinder prior to removing its inspection port and reaching his hand into the cutting chamber.

Plaintiff argues that, because the Grinder lacked an interlock device, it was "defectively designed and unreasonably dangerous" when used as a cuttings conditioner at oil and gas well sites. Pl.'s Mot. for Summ. J. at 2-3. Accordingly, Plaintiff alleges the following causes of action against JWC: (1) strict product liability; (2) negligence: product liability; (3) gross negligence: product liability; and (4) breach of the implied warranty of merchantability.

Plaintiff argues that he is entitled to judgment as a matter of law on his strict product liability claim, while JWC seeks summary judgment with respect to Plaintiff's strict product liability, negligence, and breach of the implied warranty of merchantability claims. JWC also seeks summary judgment regarding the issue of punitive damages. For the reasons that follow, JWC's Motion for Summary Judgment [Doc. No. 67] is **GRANTED IN PART** and **DENIED IN PART**; Plaintiff's Motion for Partial Summary Judgment [Doc. No. 48] is **DENIED**.

### *Standard of Decision*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most

favorable to the nonmovant. *Id.* If a party who would bear the burden of proof at trial lacks

sufficient evidence on an essential element of a claim, then all other factual issues regarding

the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A movant bears the initial burden of demonstrating the absence of a dispute of

material fact warranting summary judgment. *Id.* at 322-23. If the movant carries this

burden, the nonmovant must then go beyond the pleadings and "set forth specific facts"

that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*,

477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified

by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* Fed. R. Civ. P.

56(c)(1)(A).

"Cross-motions for summary judgment are treated as two individual motions for

summary judgment and held to the same standard, with each motion viewed in the light

most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d

1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment,

the Court is entitled to assume "no evidence needs to be considered other than that filed by

the parties." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148

(10th Cir. 2000) (internal quotation omitted).

*Discussion*

## I.   Strict Product Liability

Under Oklahoma law, "there are three elements to a manufacturer's product liability strict tort claim: the defect[5] must have (1) caused the injury in question, (2) existed at the time it left the manufacturer's control, and (3) made the product unreasonably dangerous." *Smith v. Cent. Mine Equip. Co.*, 559 F. App'x 679, 687 (10th Cir. 2014) (citing *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974)). If a product poses a danger "beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics," it is considered "unreasonably dangerous." *Woods v. Fruehauf Trailer Corp.*, 1988 OK 105, ¶ 11, 765 P.2d 770, 774.

The parties disagree regarding whether the Grinder was "dangerous to an extent not contemplated by an ordinary consumer of the product," so as to render it defective. *See Smith v. Central Mine Equip. Co.*, 876 F.Supp.2d 1261, 1267-68 (W.D. Okla. 2012). Plaintiff maintains that the Grinder, when used as a "'cuttings conditioner,' created an unacceptable risk for those tasked with operating it." Pl.'s Resp. Br. [Doc. No. 94] at 1. He asserts that JWC was aware that field operators at oil and gas well sites were exposed to "a hand and finger amputation hazard" because "they constantly were clearing solids from the

---

[5] The defect alleged "may be the result of a problem in the product's design or manufacture, or it may be the result of inadequate warnings regarding use of the product." *Wheeler v. HO Sports Inc.*, 232 F.3d 754, 757 (10th Cir. 2000) (internal quotation omitted). Plaintiff only alleges that the Grinder was defective in its design.

grinder chamber," as a result of frequent machine "jamming."[6] Pl.'s Mot. for Summ. J.
at 2. According to Plaintiff, JWC's "avoid[ence] [of] consensus industry[7] standards" and
failure to incorporate an "interlock" device into the Grinder rendered the Grinder
"unreasonably dangerous to [Plaintiff] and others similarly situated." *Id.* at 3.

There is no dispute that JWC marketed and sold the Grinder for use as a cuttings
conditioner during the course of oil and gas solids control operations. Nor is there any
dispute that its ordinary consumer was a solids-control technician at an oil and gas well
site. JWC provided an operation and use manual instructing users to utilize electrical
lockout procedures in advance of removing obstructions from the Grinder. In addition, a
label on the Grinder warned users that: "THIS EQUIPMENT REQUIRES ELECTRICAL
LOCKOUT PROCEDURES PRIOR TO SERVICING OR REMOVAL OF ANY
COVERS OR GUARDS." JWC's Mot. for Summ. J., Ex. 9. Commensurate with his
employment as a solids-control technician, Plaintiff received LOTO training, and was
aware that locking and tagging out the Grinder was necessary in advance of performing
maintenance on the machine.

On the current record, the Court finds that the Grinder was not unreasonably
dangerous; no reasonable jury could conclude that, as designed, it posed a danger "beyond

---

[6] Although Plaintiff argues that Grinders located at well sites frequently jammed due to the
considerable size of rocks and other debris loaded into them, the jam that occurred here
was not caused by rocks or debris; rather, it was apparently caused by a pin inadvertently
falling into the Grinder's cutting chamber.
[7] The standards Plaintiff refers to are derived from the American National Standard
Institute's "Safety of Machinery – General Requirements and Risk Assessment" dated
December 2, 2010. *See* Pl.'s Resp. Br., Ex. 8.

that which would be contemplated by the ordinary consumer." *Woods*, ¶ 11, 765 P.2d at 774. Here, the ordinary consumer of the Grinder is a skilled tradesman who is specifically trained to operate the machine. *See Hutchins v. Silicone Specialties, Inc.*, 1993 OK 70, ¶¶ 18-19, 881 P.2d 64, 67 (acknowledging that, whether a product is unreasonably dangerous varies depending on if the user is a "home handyman" versus a professional working in an "industrial setting" and "skilled at his job"); *Braswell v. Cincinnati*, 731 F.3d 1081, 1089 (10th Cir. 2013) ("The ordinary operator of a heavy machine tool would be properly trained."). There is no dispute that Plaintiff's injury would not have occurred if he de-energized the Grinder using the lockout, tagout procedure before performing maintenance. Properly operated, the Grinder does not pose a risk of the injury suffered by Plaintiff. *See id.* (applying Oklahoma law and noting that "[t]he ordinary operator of a press brake would . . . heed the warnings on the machine and in the instruction manual").

Although Plaintiff argues that the absence of an interlock safety feature rendered the Grinder defective, in Oklahoma, it is well-settled that, although a product "could have been made 'safer,'" this alone "does not establish that it was less safe than would be expected by the ordinary consumer." *Woods v. Fruehauf Trailer Corp.*, 1988 OK 105, ¶ 17, 765 P.2d 770, 775; *Braswell*, 731 F.3d at 1087 ("As explained by Oklahoma courts, merely because a product could be made 'safer' does not mean it posed an unreasonable danger to the ordinary consumer who used it.").

The Tenth Circuit arrived at the same conclusion when faced with an analogous set of facts in *Castillo v. American Laundry Machinery, Inc.*, No. 95-6001, 1996 WL 1182 (10th Cir. Jan. 2, 1996) (unpublished) (applying Oklahoma law). In *Castillo*, the plaintiff

was injured lubricating a laundry-folding machine while working at a commercial laundromat. Using a folded rag, the plaintiff attempted to wipe excess grease off of the machine's drive chain. His rag was caught in the moving chain, which pulled his hand into the machine's drive sprocket, causing severe injury.

The district court granted summary judgment to the manufacturer on the plaintiff's products liability claim. Affirming the district court's decision, the Tenth Circuit rejected the plaintiff's argument that the court "failed to heed his expert's conclusion that a safety interlock[8] should have been provided to prevent him from encountering the moving chain at all." *Id.* at *3. It noted that "[o]bviously, the same effect as the proposed interlock device could have been achieved by either switching off the machine or unplugging it during routine maintenance. Oklahoma law does not require that the manufacturer install a safety device where a product can be used in a safe manner by a knowledgeable employee." *Id.* (citing *Woods*, 765 P.2d at 774-75).

As in *Castillo*, here there is no dispute that the Grinder was equipped with a safety feature that allowed end-users to safely operate it. *See id.* (noting that the "plaintiff presented no evidence [to the district court] that there was no safe way to lubricate the machine as manufactured"). Even assuming, *arguendo*, that JWC's Grinder does not comport with the safety standards referenced by Plaintiff, this lack of compliance does not require a conclusion that the Grinder, as designed, is "unreasonably dangerous." *Woods*, ¶ 11, 765 P.2d at 774.

---

[8] As here, the interlock device proposed by the plaintiff "would have stopped the chain drive whenever the access panels were removed." *Id.* at *3.

For these reasons, the Grinder, as designed, cannot be considered "dangerous beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* Accordingly, JWC is entitled to judgment as a matter of law on Plaintiff's strict product liability claim. *See Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

## II.   Negligence

The Court's review of Plaintiff's negligence and breach of the implied warranty of merchantability claims is limited by virtue of the fact that, in his response to JWC's motion for summary judgment, Plaintiff only addresses his strict product liability claim. Nonetheless, the Court still must determine whether JWC, as the moving party, has satisfied its initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp.*, 477 U.S. at 322-23. The Court first addresses Plaintiff's negligence claim.

"Even with the advent of strict products liability, the negligence cause of action remains available to a plaintiff injured by a defective product." *Honeywell v. GADA Builders, Inc.*, 2012 OK CIV APP 11, ¶ 24, 271 P.3d 88, 96; *see also Cochran v. Buddy Spencer Mobile Homes, Inc.*, 1980 OK CIV APP 47, ¶ 5, 618 P.2d 947, 949. Thus, although Plaintiff alleges a strict product liability claim, Plaintiff may also assert a freestanding negligence claim. To prevail on his negligence claim, Plaintiff must demonstrate that JWC (1) owed him a legal duty, (2) failed to properly perform that duty, and (3) directly and

proximately caused Plaintiff's injuries as a result of the breach. *Lockhart v. Loosen*, 1997 OK 103, ¶ 9, 943 P.2d 1074, 1079.

JWC argues that it is entitled to judgment as a matter of law regarding Plaintiff's negligence claim because "[t]he existence of an *actual defect* is essential to establishing breach of duty in both a negligent design and a negligent manufacture cause of action." *See* JWC's Mot. for Summ. J. at 27 (emphasis in original). Thus, in JWC's view, because Plaintiff "failed to prove a defect in the Grinder under the Oklahoma consumer expectation test . . . [he] cannot prevail on a negligence product liability claim against JWC." *Id.* at 28.

The Court recognizes that "it is highly unlikely a plaintiff will prevail on a negligence claim when he cannot do so on a products liability claim." *Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1093 n.4 (10th Cir. 2013). Nonetheless, a plaintiff *may* prevail on his or her negligence claim absent the existence of an actual defect:

> Although it may be unusual for a negligence claim to survive summary judgment where the manufacturer's product liability claim does not, that result is permitted under Oklahoma law. While the strict-tort claim focuses on the characteristics of the product and its foreseeable users' expectations, negligence inquires into the reasonableness of the manufacturer's actions in light of foreseeable risks of harm. As a result, the two theories of recovery can yield different results.

*Smith v. Central Mine Equip. Co.*, 876 F.Supp.2d 1261, 1270 (W.D. Okla. 2012).[9]

Accordingly, although the Grinder does not pose a danger "beyond that which would be contemplated by the ordinary consumer," this does not, *ipso facto*, preclude

---

[9] Applying this rationale, the court in *Smith* granted the manufacturer-defendant summary judgment on the plaintiff's strict product liability claim, but denied the defendant's motion for summary judgment with respect to the plaintiff's negligence claim.

Plaintiff from prevailing on his negligence claim. *See Woods*, ¶ 11, 765 P.2d at 774; *Smith*, 876 F.Supp.2d at 1270. Thus, JWC's assertion that Plaintiff cannot prevail on his negligence claim because no defect exists under the Oklahoma consumer expectation test is misguided. Aside from this argument, JWC fails to articulate any basis sufficient to demonstrate the absence of a dispute of material fact warranting summary judgment on Plaintiff's negligence claim. *See Celotex Corp.*, 477 U.S. at 322-23. Under the current record, this issue is not "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. As it relates to Plaintiff's negligence claim, JWC's motion for summary judgment must be denied.

## III.   Implied Warranty of Merchantability

The Court next addresses Plaintiff's claim for breach of the implied warranty of merchantability. JWC initially sold the subject Grinder to first-party purchaser Jelcon Equipment, Ltd. in 2014.[10] The sale was made subject to certain terms and conditions, including a limited warranty and the following disclaimer:

> [THE] FOREGOING LIMITED WARRANTY IS THE EXCLUSIVE AND ONLY WARRANTY WITH RESPECT TO THE PRODUCTS AND SHALL BE IN LIEU OF ALL OTHER WARRANTIES . . . EXPRESS, STATUTORY OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY.

Pl.'s Mot. for Summ. J., Ex. 12 at 7.[11]

---

[10] Jelcon is not named as a party in this matter.

[11] The contract at issue also provides that "performance by the parties hereunder shall be construed in accordance with, and governed by, the laws of the State of California." Pl.'s Mot. for Summ. J., Ex. 12 at 7. Although the parties offer no choice of law analysis, in this context, there is no substantive difference between Oklahoma and California law.

Under Oklahoma and California law, a manufacturer may disclaim the implied warranty of merchantability. *See* Okla. Stat. tit. 12A, § 2-316(2) ("To exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous."); Cal. Com. Code § 2316(2) (same). By virtue of the foregoing disclaimer, JWC disclaimed any implied warranty of merchantability with respect to the Grinder and, accordingly, is entitled to judgment as a matter of law regarding Plaintiff's breach of the implied warranty of merchantability claim.[12]

## IV.   Punitive Damages

Finally, the Court turns to the issue of punitive damages. To recover punitive damages in Oklahoma, a jury must find, by clear and convincing evidence, that the defendant (1) "has been guilty of reckless disregard for the rights of others," or (2) "has acted intentionally and with malice towards others." Okla. Stat. tit. 23, § 9.1; *see also Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 66, 121 P.3d 1080, 1106 ("Under [Okla. Stat. tit. 23,] § 9.1, for punitive damages to be allowed there must be evidence, at a

---

[12] Further, Plaintiff did not purchase the Grinder; rather, his employer, Clean Harbors, purchased the Grinder from non-party Skins Oilfield Rentals. Even absent JWC's disclaimer, Plaintiff is barred from recovering against JWC for breach of the implied warranty of merchantability. *See Hester v. Purex Corp., Ltd.*, 1975 OK 48, ¶ 19, 534 P.2d 1306, 1308 ("[C]overage of [the] implied warranty of merchantability" does not extend "to employees of the purchaser."); *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954) ("The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale.").

minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred.").

As a gatekeeper, the Court has a "responsibility to determine whether *any competent evidence* exists which would warrant submission of the question of punitive damages to the jury." *Estrada v. Port City Props., Inc.*, 2011 OK 30, ¶ 20, 258 P.3d 495, 504 (emphasis in original). JWC argues that "[t]here are no facts from which a reasonable juror could find that the acts or omissions of JWC recklessly disregarded [Plaintiff's] rights creating an unnecessary risk of harm to him." JWC's Mot. for Summ. J. at 30. Plaintiff does not offer any response or analysis regarding the issue of punitive damages.

Construing all facts and reasonable inferences in the light most favorable to Plaintiff, the Court concludes that the record does not support Plaintiff's recovery of punitive damages in this case. The current record is devoid of any evidence that JWC acted with "reckless disregard" or "intentionally and with malice" towards others. *See* Okla. Stat. tit. 23, § 9.1. Absent any competent evidence warranting submission of this issue to the jury, and in light of the clear and convincing evidentiary standard, the Court must conclude that JWC is entitled to summary judgment as to Plaintiff's recovery of punitive damages.

### Conclusion

In summary, Plaintiff has failed to present evidence sufficient to create a material fact dispute regarding his strict product liability and breach of the implied warranty of merchantability claims, as well as his recovery of punitive damages in this case. Whether Plaintiff may prevail on his negligence claim remains an issue to be determined.

**IT IS THEREFORE ORDERED** that JWC's Motion for Summary Judgment [Doc. No. 67] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 48] is **DENIED**.

**IT IS SO ORDERED** this 10th day of July, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge